# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
### No. 21-1100V

| | |
|---|---|
| ITALO A. MICELI,<br><br>               Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>               Respondent. | Chief Special Master Corcoran<br><br>Filed: July 17, 2024 |

*Caitlyn Shea Malcynsky, Walsh Woodard LLC, West Hartford, CT, for Petitioner.*

*Sarah Black Rifkin, U.S. Department of Justice, Washington, DC, for Respondent.*

**FINDINGS OF FACT AND CONCLUSIONS OF LAW DISMISSING TABLE CLAIM**[1]

On March 23, 2021, Italo Miceli filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that he suffered a left shoulder injury related to vaccine administration ("SIRVA") following an influenza ("flu") vaccine he received on October 25, 2018. Petition at ¶ 1, 16. The case was assigned to the Special Processing Unit of the Office of Special Masters (the "SPU").

Although I find that Petitioner has more likely than not suffered the residual effects of his alleged vaccine-related injury for more than six months, Petitioner's Table SIRVA

---

[1] Because this Fact Ruling contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Fact Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

claim must still be dismissed because the evidentiary record does not support the conclusion that he had no history of pain, inflammation, or dysfunction of the affected shoulder prior to his vaccination. This leaves a possibly-meritorious causation-in-fact claim to be adjudicated, however.

I.   **Relevant Procedural History**

On April 7, 2023, just over two years after the case was initiated, Respondent filed a Rule 4(c) Report arguing that Petitioner had not established entitlement to compensation. ECF No. 25. In particular, Respondent argued that Petitioner cannot establish that he suffered the residual effects of his injury for more than six months as required by the Vaccine Act. Rule 4(c) Report at 6. Respondent also argued that Petitioner's claim for a Table SIRVA must fail because he "had a prior injury to his left shoulder which could explain his alleged symptoms." Rule 4(c) Report at 7-8.

I ordered the parties to brief the issue of whether Petitioner has satisfied the severity requirement. Petitioner filed his brief ("Br.") on June 29, 2023. ECF No. 28. Respondent filed a response ("Resp.") on July 31, 2023. ECF No. 29. The matter is now ripe for adjudication.

II.   **Factual History**

In August 2015 (just over three years prior to the vaccination at issue), Petitioner injured his left shoulder while on duty as a police officer. Ex. 3 at 3; Ex. 7 at 4. An MRI performed on September 21, 2015, revealed partial tearing of the infraspinatus and subscapularis and moderate AC joint space arthrosis. Ex. 4 at 5; Ex. 3 at 7. Mr. Miceli was treated by an orthopedist, received a cortisone injection, and had physical therapy treatment. Ex. 3 at 7-8.

Petitioner received a flu vaccine in his left deltoid on October 25, 2018. Ex. 2 at 3. Petitioner stated that he "experienced severe pain" immediately after his vaccination, which was "placed in a higher area of [his] arm than usual." Petitioner's Affidavit at ¶7-8. He recalled that when he woke the morning after his vaccination, he "could not move [his] left arm at all." *Id*. at ¶8.

On December 14, 2018 (seven weeks after vaccination), Petitioner had an urgent care appointment where he reported "persistent left shoulder pain and limitation in movement since [his] flu shot" six weeks ago. Ex. 8 at 10. He stated that he "had a lot more pain and swelling immediately following the immunization for about a week." *Id*. He was assessed with rotator cuff tendinitis, prescribed meloxicam, and instructed to follow up if his symptoms did not improve. *Id*. at 11. Petitioner then saw his primary care physician ("PCP") on January 2, 2019 for an annual exam. Ex. 8 at 13. He reported

continued left shoulder pain for which he had an appointment scheduled with his orthopedist. *Id*. at 13, 16.

On January 14, 2019, Petitioner returned to the orthopedist who had previously treated his left shoulder injury in 2015-16. Ex. 10 at 8. He reported having a flu shot that was "placed more superiorly than he thought would be typical" with "immediate sudden pain" and that he was "unable to use his arm the next day." *Id*. On exam, he had full active range of motion, mild pain with testing, and negative impingement signs. *Id*. at 9. He was assessed with a "new shoulder injury related to vaccine administration ("SIRVA")." *Id*. The doctor did not believe Petitioner's more recent symptoms were related to his prior shoulder injury, and speculated that Mr. Miceli would return to his baseline with supportive care. *Id*.

On February 14, 2019, Petitioner was determined to have a 4% permanent loss of use of his left shoulder. Ex. 3 at 5. In an affidavit filed with his brief, Petitioner stated that "though he did have some limitations and occasional pain, [he] was not suffering major symptoms in [his] left shoulder in the two and a half years between completing [his] treatment and the time of [his] vaccination." Petitioner's Affidavit at ¶6.

Petitioner returned to the orthopedist on March 7, 2019, reporting continued "dull, constant pain." Ex. 10 at 10. On exam, he had full range of motion, positive impingement signs, and some pain with testing. *Id*. He was assessed with a "left shoulder bursal-sided rotator cuff tear with shoulder injury related to vaccine administration." *Id.* He received a cortisone injection and was referred to physical therapy. *Id*. at 10-11.

Petitioner had an initial physical therapy evaluation on March 13, 2019. Ex. 11 at 7. He reported that he developed left shoulder pain "after having flu vaccination in Oct. 2018." *Id*. The therapist's plan of care consisted of two sessions per week for 4-6 weeks. *Id.* at 9. He attended a total of eight physical therapy sessions through April 11, 2019. *Id*. at 10-13. At his final visit, Petitioner reported "resolving" left shoulder pain and his therapist noted that he was "slowly making gains." *Id*. at 13. He was not discharged from treatment. *Id*.

On April 18, 2019, five months and twenty-four days after his vaccination, Petitioner had his final appointment with his orthopedist. Ex. 10 at 12. Petitioner reported "doing much better" after the cortisone injection and physical therapy. *Id.* He reported only occasional soreness and his exam was normal. *Id*. He was instructed to engage in "activity as tolerated" and to follow up as needed. *Id*.

Petitioner stated that at the time of his last treatment, he continued to experience pain and limitations in range of motion, but believed that he his "health insurance would not approve additional physical therapy." Plaintiff's Affidavit at ¶19.

3

### III.  Applicable Legal Standards

The Vaccine Act requires that a petitioner demonstrate that "residual effects or complications" of a vaccine-related injury continued for more than six months. Vaccine Act § 11(c)(1)(D)(i). A petitioner cannot establish the length or ongoing nature of an injury merely through self-assertion unsubstantiated by medical records or medical opinion. § 13(a)(1)(A). "[T]he fact that a petitioner has been discharged from medical care does not necessarily indicate that there are no remaining or residual effects from her alleged injury." *Morine v. Sec'y of Health & Human Servs.*, No. 17-1013V, 2019 WL 978825, at *4 (Fed. Cl. Spec. Mstr. Jan. 23, 2019); *see also Herren v. Sec'y of Health & Human Servs.*, No. 13-1000V, 2014 WL 3889070, at *3 (Fed. Cl. Spec. Mstr. July 18, 2014).

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Section 11(c)(1). A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Human Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule does not always apply. In *Lowrie*, the special master wrote that "written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Lowrie*, at *19. And the Federal Circuit recently "reject[ed] as incorrect the presumption that medical records are accurate and complete as to all the patient's physical conditions." *Kirby v. Sec'y of Health & Human Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021).

The United States Court of Federal Claims has recognized that "medical records may be incomplete or inaccurate." *Camery v. Sec'y of Health & Human Servs.*, 42 Fed. Cl. 381, 391 (1998). The Court later outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to

document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Human Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery*, 42 Fed. Cl. at 391 (citing *Blutstein v. Sec'y of Health & Human Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such testimony must also be determined. *Andreu v. Sec'y of Health & Human Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Human Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing § 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Human Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

## IV. Findings of Fact

### A. *Severity*

To satisfy the statutory severity requirement, Petitioner must demonstrate that his symptoms more likely than not continued until at least April 25, 2019 - six months after his October 25, 2018 vaccination. The record is clear that Petitioner consistently sought treatment after his vaccination through at least April 18, 2019 – a period of five months and twenty-four days (and thus less than a week short of the six-month severity "cut off.") Respondent argues that Petitioner had no symptoms at his last orthopedist appointment, received no recommendation for further treatment, and was released from care. Resp. at 4. He further argues that Petitioner has not provided evidence of ongoing symptoms beyond his own statements. *Id*. at 4-6.

At the time of his final physical therapy treatment on April 11, 2019, however, Petitioner reported *resolving* left shoulder pain. Ex. 11 at 13. He had completed eight sessions, the minimum planned at the time of his evaluation. *Id*. at 9-13. His therapist noted that he was "slowly making gains." *Id*. at 13. He was not discharged from treatment. *Id*. Although there is evidence that Petitioner had over time experienced significant improvement in his symptoms, there is no evidence that his symptoms were *fully resolved*

at that time. Similarly, at his last orthopedist appointment, Petitioner again reported significant improvement in his symptoms after the cortisone injection and physical therapy treatment. Ex. 10 at 12. However, he also reported "occasional soreness," indicating that his symptoms had not permanently resolved. *Id*. Thus, the record allows for the conclusion that Petitioner's condition had not resolved by the six-month onset anniversary.

The records are consistent with Petitioner's affidavit testimony that he continues to have "pain and occasional range of motion issues." Petitioner's Affidavit at ¶20. He further explained that his symptoms have not worsened, and are "not constant, but happen daily and increase with activity or use of the shoulder." *Id*. at ¶20, 22. In addition, Petitioner has provided a credible explanation of why he did not seek additional care for his injury after April 18, 2019. Specifically, Petitioner explained that his symptoms have not worsened since that time. *Id.* at ¶20. He also explained that he did not seek further treatment due to his work schedule, and his belief that additional treatment would be costly. *Id*. at ¶22.

Overall – taking into account the remedial nature of the Program – the evidence supports a finding that severity has been met. Based on the records of Petitioner's final visits for treatment coupled with his affidavit testimony, it is more likely than not that Petitioner continued to experience symptoms for at least seven days after his last orthopedist appointment, where he reported "occasional soreness" – which is sufficient to reach the six month threshold. At worst, this case represents a "close-call," and in "the Vaccine Program, petitioners are accorded the benefit of close calls." *Roberts v. Sec'y of Health & Human Servs.*, No. 09-427V, 2013 WL 5314698, at *10 (Fed. Cl. Aug. 29, 2013). Therefore, I find that the evidence preponderates in Petitioner's favor on this issue.

B. *Prior Shoulder Injury*

Despite my severity finding, there is a greater problem with the Table claim in this case. The medical records reveal, and Petitioner does not dispute, that Petitioner had suffered a significant left shoulder injury three years prior to his vaccination. Ex. 3 at 3; Ex. 7 at 4. Although Petitioner states that his prior injury was not causing "major symptoms" immediately prior to his October 2018 vaccination, he admits that he continued to have "some limitations and occasional pain" at that time. Petitioner's Affidavit at ¶6. In addition, Petitioner's MRI in 2015 revealed partial tearing of his left rotator cuff, which had not been repaired, and moderate AC joint space arthrosis. Ex. 4 at 5.

To prevail on a Table SIRVA claim, Petitioner must prove that he had "no prior history of pain, inflammation or dysfunction of the affected shoulder prior to vaccine

administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection." 42 C.F.R. § 100.3(c)(10)(i). Because the medical records reveal that Petitioner suffered a prior left shoulder injury that *could explain* his post-vaccination pain and limited range of motion, he cannot establish the first QAI for a Table SIRVA. Rather, the claim can only proceed as a causation-in-fact claim.

## Conclusion

Petitioner has established that he suffered the residual effects of his alleged vaccine-related injury for at least six months. However, as I also find that Petitioner cannot succeed Table SIRVA claim because of his prior left shoulder injury, Petitioner's Table SIRVA claim is dismissed. The case will be reassigned to a Special Master outside of the Special Processing Unit ("SPU"), for adjudication as a causation-in-fact claim.

**IT IS SO ORDERED.**

<u>**s/Brian H. Corcoran**</u>
Brian H. Corcoran
Chief Special Master